# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| AHMAD BISHAWI, | ) | CASE NO. 4:12cv3106 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| NORTHEAST OHIO CORRECTIONAL | ) | |
| CENTER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Ahmad Bishawi ("plaintiff") filed this civil rights action against the Northeast Ohio Correctional Center ("NEOCC"), Corrections Corporation of America ("CCA"), former NEOCC Warden Roddie Rushing ("Rushing"), Current NEOCC Warden Michael Pugh ("Pugh"), NEOCC Assistant Warden Dennis Johnson ("Johnson"), former NEOCC Chief of Security Mr. Gozman ("Gozman"), NEOCC Assistant Chief of Security David Yemma ("Yemma"), NEOCC Unit Management Chief E. Villa-Williams ("Villa-Williams"), NEOCC Sergeant V. Aikens ("Aikens"), NEOCC Lieutenant Grigsby ("Grigsby"), NEOCC Former Unit Manager H. Mollic ("Mollic"), NEOCC Case Manager Coordinator M. Mackey ("Mackey"), NEOCC Lieutenant S. Kelty ("Kelty"), NEOCC Counselor W. Powel ("Powel"), NEOCC Licensed Practical Nurse K. Campfer ("Campfer") and NEOCC Grievance Officer Sean Daugherty ("Daugherty") (collectively "defendants"). Plaintiff also brings claims for civil conspiracy under 42 U.S.C. §§ 1983, 1985 and 1986, and 18 U.S.C. § 241. In the complaint, plaintiff alleges he was held in segregation beyond the time to which he was sanctioned at a

disciplinary hearing, and asserts additional claims pertaining to conditions at NEOCC. He seeks monetary damages.

## I.  <u>Background</u>[1]

Plaintiff claims he was taken to segregation on January 1, 2011 after engaging in a verbal altercation with Sergeant Aikens. According to the complaint, plaintiff was leaving the chow hall to return to his unit when he saw two Arab inmates standing in line to enter the chow hall. He claims he exchanged greetings with the inmates and shook hands with them. He contends this action only took a few minutes. Aikens witnessed the exchange and advised plaintiff to keep walking. He replied back to her, "We are walking, you want us to run?" (Doc. No. 1, Complaint at 7.) She advised him that if he continued to speak to her in that manner, she would send him to segregation. Plaintiff states he walked away and was stopped by another corrections officer. He alleges Aiken ordered the corrections officer to take plaintiff's identification. Twenty minutes later, three officers from Unit B8 took him to segregation.

At approximately 6:50 p.m., the investigating officer, Grigsby, served plaintiff with a copy of the incident report filed by Aikens. In her report, Aikens stated:

> I ser. Aikens v. was conducting lunch Inmate Bishawi, Ahmad 07233-424 was shaking hands with almost every inmate I told Bishawi to keep moving he said I am. I then replied stop shaking everyone's hand. He then said whatever. I move at my own [pace] no woman going to tell me. I then told the inmate to give me his ID. he started to wave it and said get it. He started shaking hands again I told him again he was interrupting the chow line. He walked away.

(Doc. No. 1 at 9 [all errors in original].) The incident report charged plaintiff with refusing an order and insolence toward staff. Grigsby signed the detention order at 9:50 p.m. that same night.

Plaintiff disagreed with Aikens's version of the incident. He filed an inmate

---

[1]All facts are taken from plaintiff's complaint, and viewed in a light most favorable to plaintiff.

request form with Chief of Security Gozman asking him to review the videotape of the incident, dismiss the conduct charges against him and release him back to the general population. He asked Unit Manager Mollic and Case Manager Moderally to review the videotape but they informed him they do not conduct independent investigations. He submitted an inmate request form with Assistant Warden Johnson and asked him to appoint an investigator to view the tapes. Defendants did not respond immediately to his request.

Mollic and Moderally conducted the Unit Disciplinary Committee ("UDC") hearing on January 5, 2011. Plaintiff again requested that the officers review the videotape but they denied his request. They found him guilty of the conduct violations and sanctioned him to sixty days loss of commissary privileges. Plaintiff claims they told him he would be released from segregation the following day. Plaintiff filed an appeal of his conduct charge conviction. The Central Office of the Bureau of Prisons denied the appeal on April 28, 2011.

On the day he was scheduled to be released from segregation, January 6, 2011, plaintiff indicates Gozman, Assistant Chief of Security Yemma, and Aikens came to segregation to interview plaintiff. They told him they had received his request for an investigation and took a statement from him. Gozman informed plaintiff that he would remain in administrative segregation during the investigation, which could take one to two weeks to complete. He asked plaintiff if he still wanted to pursue the investigation under those conditions, and plaintiff agreed to the terms believing the investigation would conclude within two weeks.

Plaintiff was not released from segregation within one to two weeks and instead, remained there for two months. He states he asked Gozman on January 6, 2011 for an update on the investigation but did not receive the requested information. On January 13, 2011, plaintiff asked Yemma about the status of the investigation. He claims Yemma told him he was being

3

held on a new conduct charge for making a threat. Plaintiff spoke with Warden Rushing and Gozman on January 18, 2011, and claims Rushing told him he was in segregation for his own protection. He spoke with Assistant Warden Johnson, and Lieutenant Kelty on January 19, 2011, and claims Kelty told him he was in segregation on a new charge of making a threat. Kelty issued an administrative detention order on February 21, 2011. Plaintiff filed several grievances to Rushing and Johnson. He alleges he spoke to Gozman on March 2, 2011, who advised him that he was in segregation because he is a Muslim. Kelty passed his cell the next day on March 3, 2011, and when questioned, denied religion was a factor. Kelty reiterated plaintiff was in segregation on a pending charge of making a threat. Plaintiff spoke to Assistant Warden Pugh on March 7, 2011, who also informed him religion was not a factor in his detention in segregation. Pugh came back to plaintiff's cell on March 8, 2011, and told him charges were no longer pending against him and he would be released later in the week. Plaintiff left segregation on March 10, 2011.

Plaintiff next asserts Powel changed his job assignment on August 30, 2012 from an afternoon assignment in the recreation unit to a morning assignment in food service. He does not indicate why he was reassigned, and because the change took place over a year after he was released from segregation, the incidents appear unrelated. He claims he filed a grievance against Powel but did not receive a favorable result.

Plaintiff claims he reported to sick call on September 4, 2012, requesting emergency medical attention. He does not indicate what symptoms he was presenting and only alleges he "received no resolution to [his] medical needs." (Doc. No. 1 at 22.) The Nurse on duty told him that his medical restrictions had expired. He filed an informal resolution form, and Nurse Campfer interviewed him. He claims she failed to re-activate his restrictions and did not

4

provide treatment for his lower back injury. His grievance against Campfer was denied.

Plaintiff lists eight counts for relief. In Count One, he asserts ten separate negligence claims. According to plaintiff, Aikens negligently filed a false conduct report against him. He contends Grigsby negligently ordered him to be placed in segregation on charges that do not require placement in segregation prior to a hearing. He asserts Mollic was negligent in conducting the UDC hearing, did not call witnesses or conduct a thorough investigation, and came to an erroneous conclusion. He claims Gozman and Yemma negligently failed to release him from segregation when he finished serving his sentence on the conduct charge, and falsified a threat charge. He asserts Kelty negligently issued an administrative detention order to keep him in segregation without justification. He contends Mackey negligently failed to check on him in segregation when told to do so by the warden. He further claims Mackey and Powel negligently changed his work assignment. He alleges Rushing, Pugh, Johnson, and Villa-Williams were negligent and failed to supervise, train, and discipline their employees. Plaintiff claims Campfer provided negligent medical care for his lower back injury and a staff infection. He asserts Grievance Officer Daughtery negligently failed to resolve his grievances in his favor. Finally, plaintiff claims CCA and NEOCC negligently used unconstitutional policies and procedures, and negligently failed to supervise, train, discipline and or prevent their employees from committing negligent actions.

In Count Two, plaintiff asserts state law claims for intentional and negligent infliction of emotional distress. He alleges defendants' actions and lack of action constituted extreme and outrageous conduct that goes beyond the bounds of civilized behavior. He suggests this has left him with severe emotional distress and anxiety.

In Count Three, plaintiff asserts Gozman, Yemma, Aikens, Grigsby, Kelty, and

Mackey retaliated against him for filing grievances and requesting an investigation by filing false conduct reports, fabricating charges, and placing him in segregation.

In Count Four, plaintiff asserts Gozman, Yemma, Aikens, Grigsby, Mollic, Kelty, Rushing, Pugh, and Johnson denied him procedural due process. He contends they kept him in segregation for 69 days without providing him with a proper hearing.

In Count Five, plaintiff contends Gozman, Yemma, Aikens, Grigsby, Mollic, Kelty, Rushing, Pugh, and Johnson denied him substantive due process. He claims they filed false conduct reports, fabricated charges, placed him in segregation and retained him there for 69 days. He claims the punishment was disproportionate to the charge and was therefore arbitrary and capricious.

In Count Six, plaintiff alleges Gozman and Mackey discriminated against him on the basis of his race, religion, color, or national origin in violation of the Equal Protection Clause. He indicates Gozman fabricated a charge against him because he is a Muslim. He contends Mackey harassed him in 2007 and 2008. He also claims he is asserting a "garden-variety equal protection challenge" because he was arbitrarily classified as "a member of an identifiable group, Arab, Muslim, and/or Middle Eastern." (Doc No. 1 at 35.)

In Count Seven, plaintiff contends NEOCC, CCA, Rushing, Pugh, Johnson, Gozman, and Villa-Williams denied him "minimal civilized measures of life's necessities." (Doc. No. 1 at 35-36.)  He claims these prison officials knew of the conditions of confinement and disregard the risk to inmates' health. He lists numerous conditions of confinement at NEOCC that he finds to be substandard, and criticizes certain administrative decisions that have lead to these alleged substandard conditions, including: cancellation of programs, limitation of programs, restricted hours to the law library, restricted recreation schedule, and limitation on free

6

movement, particularly when pretrial detainees are permitted to move outside their cells. He alleges staff subject inmates to cell searches and pat-downs, and delay opening cell doors after the inmate count is done. He further alleges the teaching staff is poorly trained, inmates are double and triple celled, and the track in the recreation yard is unpaved and gets muddy in winter months. He contends the commissary prices are high, federal telephone taxes are assessed on phone time purchases, there are limited restroom facilities in the food service area and educational building, and the drinking water is unpalatable.

In addition, plaintiff objects to the conditions of confinement in the segregation unit. He indicates inmates are handcuffed during all movement outside the cell, and they remain in their cells for most of the day. He claims the gym is cold in the winter, and showers are limited in frequency and duration. He states that inmates have no television, microwave oven, or steam water. He contends they are not provided with an adequate amount of spare clothing, have limited telephone access, no law library access, and have restricted commissary privileges. Segregation inmates are denied permission to attend religious services, have no contact visits, and lose all other privileges.

Finally, in Count Eight, plaintiff asserts civil conspiracy claims under 42 U.S.C. §§ 1983, 1985 and 1986, and 18 U.S.C. § 241. He claims defendants reached an agreement to deprive him of constitutional rights by filing false conduct reports, misrepresenting facts, attempting to intimidate him, using illegal procedures, and discriminating against him.

## II.   <u>Standard of Review</u>

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it

lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III.  Analysis

### A.  42 U.S.C. § 1983

Although plaintiff states his intention to assert these claims under 42 U.S.C. §1983, that statute is not applicable in this case. To sustain a § 1983 claim, plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. *Parratt v.*

*Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person who commits the constitutional violation must be a state or local government official or employee.

In this case, none of defendants are affiliated with the state government. Plaintiff is a federal prisoner, incarcerated in a private prison, through an agreement between the private prison and the United States Bureau of Prisons. Plaintiff sues the private prison corporation and its employees. *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), establishes a limited cause of action for violations of civil rights by individual federal government employees or officials. If a cause of action for civil rights violations is available in this case, it will arise, if at all, under *Bivens*.

### B. *Bivens* Claims

A *Bivens* action is more limited in scope than an action asserted under 42 U.S.C. § 1983 against a state employee. The Court must first determine whether plaintiff has a cause of action under *Bivens* for the claims he is asserting.

The Supreme Court decided *Bivens* in 1971 to create a cause of action to redress a constitutional violation against a federal officer who conducted a warrantless search and seizure. The Court has only twice extended *Bivens*: (1) to recognize a cause of action for discrimination in public employment, *Davis v. Passman*, 442 U.S. 228, 230 (1979), and (2) to recognize a *Bivens* claim against federal prison officials for Eighth Amendment violations. *Carlson v. Green*, 446 U.S. 14, 18 (1980)**.** Since 1980, however, the Court has not authorized a *Bivens* action in any other context, and instead has refined and narrowed its application. First, the Court refused to extend *Bivens* to injuries relating to military service. *United States v. Stanley*, 483 U.S. 669, 683–84 (1987); *Chappell v. Wallace*, 462 U.S. 296, 299–302 (1983). The Court then states it would

9

not recognize a *Bivens* action against federal agencies, including the Bureau of Prisons. *FDIC v. Meyer*, 510 U.S. 471, 473 (1994). To avoid imposing asymmetrical liability costs on operators of private prison facilities, the Supreme Court declined to expand *Bivens* to provide this cause of action against a private prison corporation. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).

In addition, the Court declined to extend *Bivens* where a comprehensive, alternative remedial scheme may provide relief, even if the alternative relief is imperfect compared to *Bivens*. *See Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (refusing to create a cause of action under *Bivens* for an alleged due-process violation arising from the denial of disability benefits where relief was available under a comprehensive statutory scheme); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (refusing to extend *Bivens* to provide a cause of action against a federal employer who commits a First Amendment violation where relief was available under a comprehensive statutory scheme). The Court in *Wilkie v. Robbins*, 551 U.S. 537, 541 (2007), refined its approach to deciding whether a remedy exists under *Bivens* to a two-step process. First, the court must determine whether an adequate, alternative process for protecting the constitutional interest exists; and then, the court must decide whether it should exercise its judgment in "authorizing a new kind of federal litigation." *Id.*

Recently, in *Minneci v. Pollard*, –––U.S. –––, 132 S. Ct. 617, 181 L. Ed. 2d 606 (2012), the Court applied this two-step analysis to determine whether *Bivens* should be extended to provide a cause of action against employees of a private prison alleged to have violated a prisoner's constitutional rights. The plaintiff in *Minneci* brought a *Bivens* action against employees of the private prison at which he was incarcerated, claiming the employees had been deliberately indifferent to his serious medical needs. The Court declined to find a *Bivens* remedy

10

because "that conduct is of a kind that typically falls within the scope of traditional state tort law," specifically medical malpractice. *Id*. at 626. The Court focused its analysis on the fact that the plaintiff had a state tort claim against the employee in question available to him that could both protect his rights and deter future constitutional violations. *Id*. at 623-24. These alternative remedies under state law need not be "perfectly congruent" with the *Bivens* remedy; rather, the question is whether the alternatives "provide roughly similar incentives for potential defendants to comply with [the constitutional requirements] while also providing roughly similar compensation to victims of violations." *Id*. at 625. Mere "patchworks" of remedies arising from an array of different legal sources, however, may leave the door open for a *Bivens* action. *Wilkie*, 551 U.S. at 554.

While *Minneci* clearly bars Eighth Amendment claims based on deliberate indifference to serious medical needs against individual employees of a private prison, it remains unclear whether Eighth Amendment claims which are not related to medical care, or claims asserting violations of the First or Fourteenth Amendment, are of the type which fall within the scope of traditional tort law. *Id*. In fact, the Supreme Court in *Minneci* declined to decide "whether to imply a *Bivens* action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here . . . ." *Id*.

Moreover, only a few district courts have considered this issue. Those courts that have encountered this situation have declined to address whether *Minneci* barred the plaintiff's First, Fifth and Fourteenth Amendment claims because the claims were otherwise subject to *sua sponte* dismissal on the merits. *See McKaney v. Keeton*, No. CV 12–148–PHX–GMS, 2012 WL 1718056, at *3 (D. Ariz. May 15, 2012) (stating that while *Minneci* barred plaintiff's Eighth Amendment claims against individual employees of the private prison, it need not decide

11

whether his First Amendment claims are of the type which fall within the scope of traditional tort law because they were subject to dismissal on the merits); *Sandoval v. Corrections Corp. of America*, No. 4:12CV0093, 2012 WL 1552265, at * 4 -5  (N.D. Ohio April 30, 2012) (Pearson, J.) (dismissing *sua sponte* plaintiff's Fourteenth Amendment due process claim on the merits without deciding if it could be raised as a *Bivens* claim after *Minneci*); *Brown v. Laughlin*, No. 5:12–cv–41–DCB–RHW, 2012 WL 1365221, at *2-3 (S.D. Miss. April 19, 2012) (assuming, without deciding, that *Minneci* does not prohibit a claim under *Bivens* for wrongful placement into segregation because that claim did not state a claim for relief on the merits); *Freeman v. Vargas*, No. 5:11cv881, 2012 WL 1066897, at *7 (N.D. Ohio Mar. 28, 2012) (Lioi, J.) (addressing the merits of frivolous claims under the First, Fourth, and Fifth Amendments without considering if they could be raised in a *Bivens* action after *Minneci*).

### C.  *Bivens* Claims Asserted Against CCA and NEOCC

Plaintiff's claims against CCA and NEOCC are clearly addressed by the Supreme Court's decision in *Malesko*, and therefore cannot be brought under *Bivens.* CCA, which owns and operates NEOCC, is a private prison. The Supreme Court has already declined to extend *Bivens* to claims asserted against a private prison or the corporate entity that owns and operates it. *Malesko*, 534 U.S. at 70.

### D.  Employees of CCA and NEOCC

Plaintiff asserts seven claims that could potentially be construed as *Bivens* claims: negligence (Count One), intentional and negligent infliction of emotional distress (Count Two), retaliation (Count Three), procedural due process (Count Four), substantive due process (Count Five), equal protection (Count Six) and eighth amendment conditions of confinement (Count Seven). Because these claims are asserted against employees of the private prison, the

Court must determine if there is an alternate remedy under state tort law that provides "roughly similar incentives for potential defendants to comply with [the constitutional requirements] while also providing roughly similar compensation to victims of violations." *Minneci,* 132 S. Ct. at 625.

Plaintiff's claims in Count One and Count Two are already based on state tort law. Although plaintiff is attempting to assert violations of his constitutional rights as acts of negligence, intentional infliction of emotional distress and negligent infliction of emotional distress, *Bivens* does not provide a federal remedy for violations of state tort law. To the contrary, the fact that plaintiff identified alternate causes of action under state tort law suggests he has no cause of action under *Bivens. See id*.

It is not clear whether there is an alternate remedy under state law for the remaining five claims. Because plaintiff also fails to state a claim upon which relief may be granted for those causes of action, the Court will follow the lead of the other district courts that have encountered this situation and address the merits of these claims without deciding whether a cause of action may be implied under *Bivens*.

## 1. Retaliation

Plaintiff asserts claims of retaliation against Gozman, Yemma, Aikens, Grigsby, Kelty, and Mackey. Retaliation, though it is not expressly mentioned in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that a causal connection

13

exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

### a. Protected Conduct

The first element that plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *Id*. at 394-95. Plaintiff claims defendants retaliated against him for filing numerous grievances in the past. Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Filing frivolous grievances, however, is not protected conduct. *Hill*, 630 F.3d at 472. Plaintiff does not indicate what type of grievances he filed so it is difficult to determine whether the grievance was frivolous. Nevertheless, the Court will assume the filing of grievances was protected conduct. Plaintiff also alleges he requested an investigation into Aikens's conduct. As he was complaining of an officer's behavior, the Court will construe this as a type of grievance and consider it to also be protected conduct.

### b. Adverse Action

The second element that plaintiff must establish for his retaliation claim is that defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff does not have to show actual deterrence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398. While this element is not an overly difficult one for plaintiff to meet, certain threats or deprivations are so *de minimis* that they do not rise to the level of being

14

constitutional violations. *Id*.

The conduct of Aikens, Grigsby, Kelty, and Gozman arguably could be considered adverse actions. Plaintiff alleges that Aikens issued a conduct report against him. He alleges Grigsby served him with the conduct report and signed the detention order. He contends Gozman did not review the security tape prior to his hearing to help him to get the charges dismissed, and kept him in segregation pending the outcome of the investigation into Aikens's conduct. He claims Kelty signed the administrative detention order keeping him in segregation while the investigation was pending. Receiving a conduct report that could affect parole or result in placement in segregation would deter a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus–X*, 175 F.3d at 396. Restricting a prisoner's housing by placing him in punitive or administrative segregation also constitutes an adverse action. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (citing *Dunham–Bey v. Holden*, No. 98–1522, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999)).

The conduct of Yemma and Mackey, as alleged in the complaint, cannot arguably be considered an adverse action. Plaintiff claims he asked Yemma why he was continuing to be held and segregation, and Yemma reported that another charge had been filed against him. Plaintiff contends Mackey did not check up on him in segregation. He also raises allegations pertaining to unrelated incidents that occurred in 2007 and 2008. (Doc. No. 1 at 33-34). Answering a question and failing to check in on an inmate are *de minimis* actions and, alone, are not adverse in nature.

### c.  Motivation for Adverse Action

The third element that plaintiff must establish for his retaliation claim to survive dismissal is that the adverse action was motivated, at least in part, by his participation in

15

protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). This element addresses whether the defendants' subjective motivation for taking the adverse action was at least, in part, to retaliate against the prisoner for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If the prisoner can show that the defendants' adverse actions were at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct. *Id*. at 399.

Here, plaintiff fails to show any causal connection between unidentified grievances he filed in the past and defendants' actions. Aikens filed a conduct report against plaintiff based on the verbal altercation she had with him as he exited the chow hall. Even accepting plaintiff's version of the altercation as true, the charges that were brought against plaintiff, insolence to staff and refusing an order, are supportable. Moreover, there is no factual allegation in the complaint that would even suggest that Aikens knew of specific grievances, or that she decided to retaliate against him for bringing those grievances.

Similarly, Grigsby delivered the conduct report to plaintiff in segregation, and signed the detention order to keep him there pending a hearing. That action was precipitated by Aikens's conduct report. Plaintiff contends Gozman did not review the security tape prior to his hearing to help him to get the charges dismissed, and kept him in segregation pending the outcome of the investigation into Aikens's conduct. He does not allege facts to suggest these actions were motivated by the grievances he filed. While keeping plaintiff in segregation pending the outcome of the investigation is related to his request for an investigation, Gozman discussed this with plaintiff and plaintiff agreed to the course of action. He further alleges Kelty signed the administrative detention order to keep him in segregation during the investigation. Yet, there are no facts in the complaint which suggest this action was motivated by a desire to retaliate against

16

plaintiff as opposed to the threat charges which were brought against him. In short, plaintiff fails to demonstrate that any of these defendants retaliated against him for filing past grievances or for requesting an investigation.

While their conduct did not amount to an adverse action, plaintiff also fails to allege facts to reasonably suggest Yemma and Mackey were motivated, even in part, by grievances plaintiff filed. He claims Yemma informed him that a threat charge had been filed against him. Plaintiff indicates that Yemma provided this information in response to his question. There is no allegation that Yemma's response was motivated by plaintiff's past grievances. Similarly, Mackey did not check on him in segregation, but there are no allegations in the complaint suggesting the reason he did not perform this action. Plaintiff alleges Mackey filed conduct reports against him in 2007 and 2008, but those incidents have no apparent connection to his most recent conduct violation. Plaintiff does not allege Mackey was involved in any way in that incident. Therefore, plaintiff has failed to state a claim for retaliation.

### 2. Due Process

Plaintiff next claims that Gozman, Aikens, Grigsby, Mollic, Kelty, Rushing, Pugh, and Johnson kept him in segregation for 69 days without providing him with procedural due process. He further alleges these defendants filed false conduct charges, fabricated charges, and placed him in segregation for 69 days in violation of the substantive component of the Due Process Clause.

The Fifth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement

17

them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

   The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id.* Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). Many procedural due process claims are grounded in violations of state-created rights, or rights that do not enjoy constitutional standing. *See id.* The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power. *Howard*, 82 F.3d at 1349. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id*. It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349 (quotation and citation omitted.)

### a. Procedural Due Process

Plaintiff claims he was sanctioned with placement in segregation for 69 days. Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation and citation omitted.). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id*. at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

19

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement was considered to be "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487. Similarly, the Sixth Circuit Court has held a prisoner's designation as a member of a security threat group did not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Plaintiff does not claim he was sanctioned with the loss of good time credits. His placement in segregation for a period of 69 days does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Therefore, plaintiff has not alleged facts to suggest a liberty interest that triggers due process protection was at issue, and has failed to state a claim for denial of procedural due process.

### b.  Substantive Due Process

Plaintiff's substantive due process claim is also subject to dismissal. Due process claims of this nature involve official acts that cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id*. at 833. The conduct

asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.* (internal quotation and citation omitted.)

Plaintiff's substantive due process claim is based upon conduct alleged to be so severe that it shocks the conscience. However, where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff's substantive due process claim is based on his retaliation claim under the First Amendment. He is essentially arguing that the defendants retaliated against him and therefore denied him substantive due process. His substantive due process claim is dismissed as duplicative of his First Amendment retaliation claim.

### 3. Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiff asserts three equal protection claims. First, he contends Gozman identified him as a Muslim and fabricated a threat charge against him. Second, he alleges

Mackey harassed him in 2007 and 2008 by filing conduct charges against him and concludes, without explanation, that Mackey discriminated against him. Finally, he claims he is asserting a garden variety discrimination claim, stating he was arbitrarily classified as an Arab, Muslim, or of Middle Eastern descent.

Plaintiff's claim against Gozman is not consistent with the factual allegations he includes in his complaint. He contends Gozman continued his term in segregation while the investigation into Aikens's behavior was being conducted. On January 13, 2011, plaintiff indicated that he asked Yemma why he was still in segregation, and Yemma replied that a new conduct charge of making a threat had been leveled against him. He asked Kelty the same question on January 19, 2011, and received the same answer. Kelty issued the administrative detention order on February 21, 2011. Plaintiff alleges his conversation with Gozman concerning his religion occurred on March 2, 2011, nearly two months after he first learned that a threat charge had been made and after Kelty signed the administrative detention order. There are no allegations in the complaint that suggest the threat charge was brought by Gozman, that plaintiff's religion was a factor in the bringing the charge, or that plaintiff was treated differently than non-Muslim inmates under similar circumstances.

Plaintiff's equal protection claim against Mackey is based on incidents that occurred in 2008. The only current allegation against Mackey is that she and Counselor Powel changed plaintiff's work assignment from the afternoon shift in the recreation yard to the morning shift in the food service area. The equal protection claims based on incidents that occurred in 2008 are time-barred. Ohio's two year statute of limitations for bodily injury applies to § 1983 claims. *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995). The court notes that the doctrine of *res judicata* is an affirmative defense that generally

must be raised by the defendants in a responsive pleading. FED. R. CIV. P. 8(c)(1); *see Haskell v. Wash. Township*, 864 F.2d 1266, 1273 (6th Cir. 1988). However, the United States Supreme Court and the United States Sixth Circuit Court of Appeals have indicated that a court may take the initiative to assert the *res judicata* defense *sua sponte* in "special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000); *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003); *Holloway Constr. Co. v. United States Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) ("[A] district court may invoke the doctrine of *res judicata* in the interests of, *inter alia*, the promotion of judicial economy.") This case fits precisely within those circumstances. These incidents occurred four years ago, challenge a disciplinary hearing, and are wholly irrelevant to the incidents which are the subjects of this complaint.

While his reassignment to the food service area is a contemporary event, plaintiff does not allege any facts to suggest how Mackey was involved or to indicate that religious or racial discrimination was a factor. Plaintiff's conclusory statement that the reassignment was motivated by his religion, without more, is insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

### 4. Conditions of Confinement

Plaintiff next objects to numerous condition of confinement in NEOCC. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Supreme Court set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts, which, if true, establish that a sufficiently serious deprivation has occurred. *Id*. Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id*.

Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id*. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff fails to establish the objective component of his claim. He complains of limited programs, restricted hours for the law library and recreation areas, limitation on free movement, delayed opening of doors after inmate count is concluded, double and triple celling of inmates, unpaved muddy track in the recreation yard, high prices at the commissary, and other similar restriction. These, however, do not represent the type of serious deprivations that trigger Eighth Amendment protection. The Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10. Inmates "cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). The conditions described by plaintiff are merely discomforts and inconveniences. He failed to state a claim for relief under the Eighth Amendment.

### E.  Conspiracy Claims

The eighth count in plaintiff's complaint asserts claims of an alleged conspiracy under 42 U.S.C. §§ 1983, 1985 and 1986, and 18 U.S.C. § 241. To sustain a conspiracy claim

under § 1983, plaintiff must establish the active participation of a state government official or employee in the conspiracy. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004). Plaintiff does not name state government officials or employees as defendants in this action. Moreover, plaintiff cannot assert his conspiracy claim under *Bivens* as a cause of action for conspiracy if such an action is available under state law. *See Schweiker*, 487 U.S. at 414.

To state a claim for conspiracy pursuant to 42 U.S.C. § 1985, plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)). The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)). These types of conspiracy claims must also be plead with specificity and cannot be stated with conclusions and opinions. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Plaintiff does not elaborate on the factual basis for his conspiracy claims. He merely states:

> from on or about June 1, 2006, and continuing up to this date, in Youngstown, Ohio and elsewhere the defendants, #1-16, conspired, reached understanding, and agreed with each other and others unknown to the plaintiff, through explicit or implicit means, to inflict injury upon the plaintiff, and to deprive the plaintiff of his constitutional rights and privileges secured to him by the Constitution or laws of the United States or under state law;  that in furtherance of the conspiracy and said agreement defendants falsified reports, misrepresented facts, filed false

> charges, harassed, attempted to intimidate, oppress, threatened, implied illegal procedures, illegal actions, misconducts, discriminated, and negligence and/or reckless disregard for the truth . . . .

(Doc. No. 1 at 40 [all errors in original].) He attempts to list the basic elements of a conspiracy cause of action but includes no factual allegations required to plead this claim with specificity or to meet the basic pleading requirements of Rule 8. Furthermore, he fails to suggest the conspiracy was designed to discriminate against him on the basis or his membership in a protected class. He fails to state a claim for relief under § 1985.

Because plaintiff has failed to state a claim under § 1985, his claims for relief under § 1986 must also be dismissed. Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them. Without a violation of § 1985, there can be no violation of § 1986

Finally, 18 U.S.C. § 241 is a criminal statute. It does not provide a private right of action. *U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, at *2 (6th Cir. July 9, 2003); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Plaintiff lacks standing to file an action under 18 U.S.C. § 241. *Booth v. Henson*, No. 06-1738, 2008 WL 4093498, at *1 (6th Cir. Sept. 5, 2008).

26

## IV.    <u>Conclusion</u>

For all the foregoing reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

**IT IS SO ORDERED**.

Dated: July 26, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[2] 28 U.S.C. § 1915(a)(3) provides, in pertinent part, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."